P. WARD, Plaintiff—Appellant,

v.

Daryl GATES; Willie Williams; Bayan Lewis; Bernard Parks; David Alpers, in his official and individual capacity; ADAM Basatemur, in official and individual capacity; Donna Cornejo, in official and individual capacity; Frank Hernandez, in official and individual capacity; Clarence Mejia, in official and individual capacity; Cynthia Terrazas, in official and individual capacity; Richard Riordan; Joel Wachs; Laura Chick; John Ferraro; Ruth Galanter; Richard Alarcon; Mark Ridley–Thomas; Nate Holden; Hal Bernson; Richard Alatorre; Rudy Svorinich, Jr.; Lapd Officers, 20 unknown named, Defendants—Appellees,

and

Sonia Monica, in official and individual capacity; Jeffrey Waco, in official and individual capacity; City of Los Angeles, Defendants.

No. 00–56921.

D.C. No. CV–97–07155–JSL.

United States Court of Appeals, Ninth Circuit.

Argued and submitted Oct. 9, 2002.*

Decided Nov. 26, 2002.

---

* This panel unanimously finds this case suitable for decision without oral argument.  See    Fed. R.App. P. 34(a)(2).

342

Before HUG, BRUNETTI and O'SCANNLAIN, Circuit Judges.

MEMORANDUM

Patricia Ward appeals the district court's judgment as a matter of law that the Los Angeles police did not unlawfully detain nor use excessive force against her. The facts and prior proceedings are known to the parties, and are restated herein only as necessary.

## I

A suspect is arrested if a reasonable person in her position would conclude that she is not free to leave after brief questioning. *United States v. Del Vizo,* 918 F.2d 821, 824 (9th Cir.1990). The difference between an arrest and a stop is one of degree and is dependent upon the "totality of the circumstances": specifically, the intrusiveness of the stop, how much the plaintiff's liberty was restricted, and the reasonableness of the methods used by the police officers under the circumstances. *Washington v. Lambert,* 98 F.3d 1181, 1185 (9th Cir.1996). This is a balancing test weighing the interests of individuals to be free from unreasonable searches and seizures against the legitimate public interest in protecting the safety of the police officers. *See id.* at 1186. "It is because we consider both the inherent danger of the situation and the intrusiveness of the police action, that pointing a weapon at a suspect and handcuffing him ... will not automatically convert an investigatory stop into an arrest that requires probable cause." *Id.* at 1186 (citing *Del Vizo,* 918 F.2d at 825); *see also United States v. Miles,* 247 F.3d 1009, 1012 (9th Cir.2001); *United States v. Taylor,* 716 F.2d 701, 709 (9th Cir.1983) ("[T]he use of handcuffs, if reasonably necessary, while substantially aggravating the intrusiveness of an investigatory stop, do[es] not necessarily convert a *Terry* stop into an arrest necessitating probable cause."). Thus, when the police reasonably act because of legitimate safety concerns, intrusive and aggressive police conduct, such as drawing their weapons and handcuffing a suspect, does not automatically turn a legal stop into an arrest.

■ In this case, the officers were investigating a suspected bank burglary in progress, a dangerous felony, and were unaware of the number of suspects, if any, that were inside the bank and whether they were armed. When the officers encountered Ward and Koller, the suspects were not wearing uniforms and, at first blush, did not appear to have legitimate business within the bank. It was a reasonable assessment from the officers' perspective to point their weapons at the individuals and to handcuff them in order to lead them out of the bank so that the officers could sweep the bank. Although neither Ward nor Koller attempted to flee the scene or resist the officers' orders, the officers had a legitimate concern that additional undiscovered parties were present and reasonably acted to protect the officers' safety. Given the totality of the circumstances, a reasonable person would have thought that she would be free to leave after brief questioning.

■ The appellants contend, however, that the length of the detention transformed an otherwise lawful stop into an arrest. The officers had determined that Ward and Koller were unarmed and that there were no additional suspects within the bank, but the officers did not un-handcuff them until they had verified their story 20 minutes later. Although 20 minutes is not an exceedingly long time, it is certainly long enough to transform a stop into an arrest, *see, e.g., United States v. Chamberlin,* 644 F.2d 1262, 1267 (9th Cir. 1980) (holding suspect for 20 minutes constituted an arrest).

The Supreme Court has refused to adopt a per se rule on how long a detention may be before it is transformed into an arrest, instead holding that courts should determine whether, given the totality of the circumstances, the detention was unreasonable. *United States v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (holding that 20 minute detention under the circumstances of the case was not arrest). Reasonableness depends on whether "the police diligently

pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Id.*

Thus, even though Ward's continued detainment diminished the assumption that she was "free to leave after brief questioning," it does not necessarily transform a stop into an arrest. The Supreme Court has admonished courts "not [to] indulge in unrealistic second-guessing" when "police are acting in a swiftly developing situation." *Id.* We adhere to that directive here. The police worked diligently to sweep the bank and once the bank was swept, they sought to verify Ward's story. There is no evidence that the officers did not seek to "dispel their suspicions quickly." Ward's continued detention was thus reasonable under the totality of the circumstances.

## II

Ward also claims that the officers violated her Fourth Amendment rights by using objectively unreasonable force in apprehending and detaining her. We must first examine the "type and amount of force inflicted," viewing the facts and circumstances of the incident from the officers' perspective, and balance the intrusions against the government interests at stake. "In evaluating the government's interests, the court may consider such factors as 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Jackson v. City of Bremerton*, 268 F.3d 646, 652 (9th Cir.2001) (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

In this case, the appellant alleges that the officers unreasonably pointed their weapons at her, handcuffed her roughly, smashed her arm on the desk, and refused to loosen tight handcuffs. Under some circumstances, this could be excessive force. *Compare Robinson v. Solano County*, 278 F.3d 1007 (9th Cir.2002) (pointing a gun at suspect's head constituted unreasonable force when no exigent circumstances existed and the defendant was obviously not armed), *with Jackson v. City of Bremerton*, 268 F.3d 646, 651–53 (9th Cir.2001) (holding that rough handling under the exigent circumstances present was not excessive force). However, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (citation omitted).

■ Arguably in this case the officers used more force than was actually necessary. Ward and Koller were not criminals and had no intentions of committing a crime or hurting the officers; there was no need for the officers to use any force at all. The question, however, is not how much force was actually needed, but how much force a reasonable officer would perceive needing. *Saucier v. Katz*, 533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," *Graham*, 490 U.S. at 396, and the officers' conduct need not be the "least intrusive means," but only need to be "within that range of conduct ... identif[ied] as reasonable." *Billington v. Smith*, 292 F.3d 1177, 1188–89 (9th Cir. 2002).

Although mistaken in their belief that Ward and Koller were dangerous, it was not an unreasonable mistake given the totality of the circumstances, and thus the officers were justified using more force

than necessary to apprehend and detain Ward. *See Saucier*, 533 U.S. at 205 ("If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed."). At the time the officers handcuffed Ward, they were unaware that she was authorized to be in the bank and that she was unarmed, and importantly, they were also unaware if additional parties were inside the bank. The officers thought that Ward and Koller were committing a serious felony, and they hurriedly sought to detain them and remove them from the situation in case additional parties were inside the bank. Under the facts as the officers thought them to be, they did not use excessive force to apprehend and detain Ward.

However, it is less clear whether the officers' refusal to loosen tight handcuffs was reasonable force. The Ninth Circuit has previously held that the continued detention in tight handcuffs was excessive force. In *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1322–23 (9th Cir. 1995), this court reversed a grant of summary judgment in favor of the police on an excessive force cause of action, holding that an excessive force claim was possible against officers that handcuffed Alexander for 45 minutes after the officer noticed that Alexander's wrists were "mushy" or "soft" and Alexander told him that he was a dialysis patient. Alexander told the officers that his handcuffs were too tight and asked for the handcuffs to be removed or loosened, but the officers did not adjust them for 35 to 40 minutes. *Id.* His hands swelled and turned blue; nine months later his right hand remained numb and he could not make a fist, and it still had a "walnut-sized protrusion on the back of it below the wrist." *Id.*

Similarly, in *Palmer v. Sanderson*, 9 F.3d 1433, 1434–35 (9th Cir.1993), this court held that an officer used unreasonable force when he handcuffed Palmer, a 67–year–old man that had recently suffered a stroke that impaired his mobility, so tightly that he suffered pain and bruises that lasted several weeks. Palmer was suspected of drunken driving and was being cooperative and offerred to accompany the officer to the police station if needed. When Palmer told the officer that the handcuffs were too tight, the officer refused to loosen the handcuffs. *Id.* at 1436. The court stated that "no reasonable officer could believe that the abusive application of [the] handcuffs was constitutional." *Id.*

■ In this case, Ward alleges that she told Waco and Monico that the handcuffs were too tight, and that they refused to loosen them, causing her bruising on her wrists. During the immediate apprehension, given the surprise at finding two individuals inside the bank and the concern for officer safety, failing to readjust the handcuffs immediately was not unreasonable.

The continued detention in handcuffs that may have been too tight, however, is much less reasonable, especially after the bank had been swept. Viewing the facts most favorable to Ward, a reasonable jury could have found that the officers used excessive force against her by failing to loosen tight handcuffs once the bank was swept and the officers were no longer concerned for their safety.

### III

■ A holding that a claim for excessive force could be made, however, is not the end of our inquiry.[1] Even if "a viola-

---

1. "In reviewing decisions of the district court, we may affirm on any ground finding support

tion could be made out on a favorable view of the parties' submissions," Waco and Monico are entitled to qualified immunity against money damages unless a reasonable officer would have known that they violated clearly established law. *Saucier*, 533 U.S. at 201. "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Id.* at 205; *see also Robinson v. Solano County*, 278 F.3d 1007, 1012 (9th Cir.2002) ("[T]he standard of reasonableness for the purposes of qualified immunity is distinct from the standard of reasonableness embodied in the Fourth Amendment.").

Qualified immunity "requires a two-part analysis: 1) Was the law governing the official's conduct clearly established?   2) Under that law, could a reasonable officer have believed the conduct was lawful?" *Act Up!/Portland*, 988 F.2d at 871. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "If the law did not put the officer on notice that his conduct would be *clearly unlawful*, summary judgment based on qualified immunity is appropriate." *Id.* (emphasis added).

We cannot say that the officers' conduct in detaining Ward was so clearly unlawful that a reasonable officer could not have believed that his conduct was legal.  Excessive force claims are extremely fact-dependent, and wide ranges of conduct are deemed reasonable dependent upon the underlying facts.

In this case, Ward was being detained for burglary, a serious felony.  The initial

handcuffing was lawful under the circumstances, unlike *Hansen* and *Palmer*, and unlike *Alexander*, the nature of Ward's injuries were not such that a reasonable officer would have realized that the handcuffs were unreasonably tight.  Ward was bruised for a couple of weeks, but not seriously injured.  In short, the conduct alleged in this case falls in the gray area between constitutional and clearly unconstitutional.  While the officers' conduct may in fact be unconstitutional, a reasonable officer could have thought that it was lawful, and, thus, the officers are entitled to qualified immunity.

## IV

We decline to preserve Ward's claim under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 695, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Even assuming a valid argument could be made that successful disposition on her underlynig claims was not necessary to preserve her *Monell* claim, Ward waived the argument by not specifically raising it in her opening brief.  *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir.1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief.") (citation omitted).

**AFFIRMED.**

---

in the record.  If the decision below is correct, it must be affirmed, even if the district court relied on the wrong grounds or wrong

reasoning." *Cigna Property and Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 418 (9th Cir.1998) (citations omitted).