**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ADAM BROOKS,
      *Plaintiff-Appellee*,

and

JOHN KEVIN SMITH,
      *Plaintiff*,

v.

CLARK COUNTY; JIM
KEENER, Marshal,
    *Defendants-Appellants*,

and

MOODY, Sergeant,
      *Defendant*.

No. 14-16424

D.C. No.
2:13-cv-01693-JAD-VCF

OPINION

Appeal from the United States District Court
for the District of Nevada
Jennifer A. Dorsey, District Judge, Presiding

Argued and Submitted May 12, 2016
San Francisco, California

Filed July 7, 2016

Before: Jerome Farris, Diarmuid F. O'Scannlain,
and Morgan Christen, Circuit Judges.

Opinion by Judge O'Scannlain

**SUMMARY**[*]

**Civil Rights**

The panel affirmed in part and reversed in part the district court's order denying a motion to dismiss a bail enforcement agent's claim that a courtroom marshal used excessive force, in violation of the Fourth Amendment, when executing a judge's order to remove a disruptive individual from her courtroom.

The panel affirmed the denial of the marshal's absolute immunity defense to the bail enforcement agent's claim for damages. The panel concluded that the marshal was not performing a judicial function when he removed the bail enforcement agent from the courtroom, allegedly using force in excess of what the judge commanded, and was not entitled to absolute quasi-judicial immunity.

The panel reversed the district court's denial of the marshal's qualified immunity defense. The panel concluded that on the basis of the allegations in the complaint, it was not beyond debate, at the time the marshal acted, that the amount of force he employed violated the Constitution.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Matthew Christian (argued), Deputy District Attorney; Steven B. Wolfson, District Attorney; Clark County District Attorney's Office, Las Vegas, Nevada; for Defendants-Appellants.

Cal J. Potter, III (argued) and C.J. Potter, IV, Potter Law Offices, Las Vegas, Nevada, for Plaintiff-Appellee.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether a courtroom marshal is entitled to invoke absolute immunity as a defense to the allegation that he used excessive force when executing a judge's order to remove a disruptive individual from her courtroom. If he is not, we must decide whether qualified immunity insulates him from having to pay damages for his allegedly unconstitutional conduct.

I

A

Adam Brooks is a bail enforcement agent who owns Las Vegas Fugitive Recovery, a bail enforcement agency licensed in Nevada.[1] On October 4, 2011, Brooks and two fellow bail

---

[1] Because this case has not advanced past the motion to dismiss stage, we recite the facts as alleged in Brooks's complaint, and assume them to be true. *See, e.g.*, *Harris v. Rand*, 682 F.3d 846, 850–51 (9th Cir. 2012).

agents—John Kevin Smith and Matthew Penny—arrived at the Regional Justice Center in Las Vegas. They were in pursuit of Malena Reed and Mary Beth Lourcey, two women charged with conspiracy to make a bomb threat who were then appearing in the Justice Court, in the courtroom of Justice of the Peace Deborah Lippis, to waive their right to a preliminary hearing.[2]

Brooks and his two compatriots were intent on taking Reed and Lourcey into custody, apparently at the behest of AIA Surety, a bail bond insurance company, because the ladies had allegedly failed to keep the company apprised of their whereabouts. Judge Lippis was having none of it; although she refused to exonerate the ladies' bonds, she told Smith flatly that "[t]hese ladies aren't fugitives" and "are not to be taken into custody" until the bond insurance company had filed a proper motion with the district court.

Smith, unhappy with Judge Lippis's instructions, told the ladies they could not leave until he had a chance to make a phone call to his superiors. "No," Judge Lippis said, turning to her marshal, Jim Keener: "Jim, go out there and tell him he cannot tell those people what to do, that they are free to go, and ask him if he'd like me to take *him* into custody." Undeterred, Smith began citing case law to Keener, while he and Penny remained in the hallway, evidently menacing Reed and Lourcey with the threat of arrest upon their exiting the courtroom.

---

[2] In addition to the facts alleged in the complaint, we will also consider the transcript from Judge Lippis's courtroom on the date in question. *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987); Fed. R. Evid. 201(b).

Judge Lippis tried to resume the court's business by taking up a different matter, but Smith interrupted the proceedings, calling out the name of a Nevada statute (Nev. Rev. Stat. § 178.526) that describes a surety's state-law power to authorize bail enforcement agents to arrest a defendant on its behalf.  Judge Lippis, understandably agitated, pronounced Smith "under arrest for disrupting this court" and for "failing to follow the lawful orders of the court.  In you go."  Instead of backing down, however, Smith tried to pass his phone to Penny, who was still waiting outside.  "Unbelievable," Judge Lippis declared, giving Penny "the same orders" she had given Smith, namely, that "[t]hese women are not to be arrested."  Addressing the duo, Judge Lippis admonished them: "you've stopped my entire court proceedings with the behavior, both of you. . . . [Smith] was yelling in the hallway and I heard him citing law to my marshal.  He failed every—he refused to follow every order I entered."  Judge Lippis reiterated her order that Reed and Lourcey "are not to be arrested, they are not."  She then dismissed Penny.  Turning back to Smith, Judge Lippis stated "[i]t's clear to me that you have absolutely no respect for the court process and that you're going to do exactly what you want to do."  She ultimately decided to release Smith from custody, but with the warning that "if you ever pull this garbage in this courtroom or any other courtroom again, . . . you will stay in custody."

Thinking the coast was at last clear, Judge Lippis tried to resume court business.  But then Brooks entered the scene.  "It's illegal what you guys are doing here," he declared.  "Get out of my courtroom," Judge Lippis replied.  "Out, out, out." "Your honor, I'm taking names because it's illegal," Brooks carried on.  "We're a licensed bail enforcement company. I'm a retired police officer here.  What you're doing is illegal

and I'm going to be suing your—everybody here." Brooks repeatedly spoke over Judge Lippis as she asked him to "[p]lease leave," even blurting out the same Nevada statute Smith had cited earlier.

At this point Judge Lippis turned to Marshal Keener, asking him to "please escort this nice gentleman out of the courtroom." Still refusing to cooperate, Brooks declared that he was a "retired police officer." "I don't care who you are," Keener replied, "[l]et's go."

According to Brooks's complaint, Keener then "shoved" him through the courtroom's double doors, "injuring [his] back." Brooks further alleges that he was taken to a hospital for treatment. He does not allege any details about whatever injuries he sustained.

B

Brooks and Smith filed this lawsuit together under 42 U.S.C. § 1983, naming various defendants, including Keener in his individual capacity. The complaint seeks only damages. Upon motion by Keener, the district court dismissed most of their suit, and Smith is not a party to this appeal.

The only issue before us is whether the district court erred by refusing to dismiss Brooks's claim that Keener used excessive force, in violation of the Fourth Amendment, when he removed Brooks from Judge Lippis's courtroom. Keener moved to dismiss on the theory that he was entitled to absolute, quasi-judicial immunity, or, if not, qualified immunity. The district court rejected both arguments. Keener timely appealed. We have jurisdiction under

28 U.S.C. § 1291. *Mitchell v. Forsyth*, 472 U.S. 511, 526–27 (1985); *Behrens v. Pelletier*, 516 U.S. 299, 307 (1996).

II

Keener first argues that he should be absolutely immune from having to pay damages for the way in which he carried out Judge Lippis's instruction to escort Brooks out of her courtroom.

We have never held that courtroom officials—bailiffs, marshals, and the like—receive absolute immunity whenever they act pursuant to a judge's order, regardless of whether they execute such order in a way that deviates from what the judge commanded. The circuits are divided on the question. *Compare Richman v. Sheahan*, 270 F.3d 430, 438–39 (7th Cir. 2001) (rejecting absolute immunity), *and Martin v. Bd. of Cty. Comm'rs*, 909 F.2d 402, 404–05 (10th Cir. 1990) (same), *with Martin v. Hendren*, 127 F.3d 720, 721–22 (8th Cir. 1997) (holding such officials do have absolute immunity).

A

Absolute immunity is an extraordinary attribute. Those who act while clad in its armor cannot be held liable for damages under any circumstances, even if they violate clearly established federal rights, and even if they do so intentionally or maliciously. *E.g.*, *Pierson v. Ray*, 386 U.S. 547, 554 (1967); *Briscoe v. LaHue*, 460 U.S. 325, 331–32 (1983). Absolute immunity means such officials never have to justify their actions; it all but guarantees swift dismissals under Rule 12(b)(6), thereby sparing its beneficiaries the many different costs (pecuniary and otherwise) that litigation entails. The

upside is that officials acting with absolute immunity may discharge their duties with undampened ardor, and all of us—not only, or even primarily, the officials—are better off as a result.  The most obvious downside is that "it would be monstrous to deny recovery" in cases where an official "is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good." *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949) (Hand, J.).  But in some contexts, we are willing to tolerate the denial of individually effective remedies because the harm of such episodic injustices is outweighed by the systemic benefits a well-calibrated immunity regime engenders.

Judges are among those officials who "have long enjoyed a comparatively sweeping form of immunity," which has been justified on the theory that it helps "protect[] judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants." *Forrester v. White*, 484 U.S. 219, 225 (1988).[3]  The need to "free[] the judicial process of harassment or intimidation" has led courts to extend absolute judicial immunity beyond the judges themselves, including "to Executive Branch officials who perform quasi-judicial functions." *Id.* at 225–26.  In all cases, the Supreme Court has emphasized that "immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Id.* at 227.

---

[3] That being said, a judge does not receive absolute immunity for "nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity," and a judge does not receive absolute immunity "for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (per curiam).

The Supreme Court has also made clear that "[t]he proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993). The justification must take care to explain why the official hoping to secure absolute immunity would not be sufficiently shielded by qualified immunity, which already affords officials considerable leeway to perform their jobs without fear of personal liability. Indeed, as the Court has explained, "[t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties. We have been 'quite sparing' in our recognition of absolute immunity, and have refused to extend it any 'further than its justification would warrant.'" *Burns v. Reed*, 500 U.S. 478, 486–87 (1991) (quoting *Forrester*, 484 U.S. at 224 and *Harlow v. Fitzgerald*, 457 U.S. 800, 811 (1982)). Against the backdrop of qualified immunity, the question in any given context is always what marginal costs and benefits society would stand to incur by outfitting the particular official with an additional layer of protection.

B

In this case, Brooks has alleged that Keener violated his Fourth Amendment rights by using excessive force to remove him from Judge Lippis's courtroom. And the allegation is quite clear that Judge Lippis did not order Keener to use excessive force; instead, the allegation is that Keener acted beyond the scope of Judge Lippis's express and implied instructions.

1

Fleshing out the functional analysis underlying judicial and quasi-judicial immunity, the Supreme Court has instructed that "the 'touchstone' for the doctrine's applicability has been 'performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights.' When judicial immunity is extended to officials other than judges, it is because their judgments are 'functional[ly] comparab[le]' to those of judges." *Antoine*, 508 U.S. at 435–36 (quoting *Burns*, 500 U.S. at 500 (Scalia, J., concurring in the judgment in part and dissenting in part) and *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20 (1976)).[4]

Such terms cannot be used to describe the function Keener was performing when he removed Brooks from Judge Lippis's courtroom. He makes no effort to argue that when a courtroom marshal seizes an unruly litigant or spectator, the marshal is performing a task comparable to that of a judge, and it is clear to us that he is not. As we explained several decades ago, in a truly extraordinary case in which *a judge* allegedly came off the bench and physically beat someone who refused an order to leave his courtroom:

> The decision to personally evict someone
> from a courtroom by the use of physical force

---

[4] The Court has also noted that "[i]n determining which officials perform functions that might justify a full exemption from liability, 'we have undertaken a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it.'" *Antoine*, 508 U.S. at 432 (quoting *Butz v. Economou*, 438 U.S. 478, 508 (1978)). Keener has not attempted an historical analysis.

> is simply not an act of a judicial nature, and is not such as to require insulation in order that the decision be deliberately reached. . . . More importantly, we cannot believe that the purpose of the judicial immunity doctrine—to promote 'principled and fearless decision-making'—will suffer in the slightest if it is held that judges who physically assault persons in their courtrooms have no automatic immunity.

*Gregory v. Thompson*, 500 F.2d 59, 64 (9th Cir. 1974). So too here. Indeed, we even opined that had the judge in *Gregory* "summoned a sheriff," and "had the sheriff assaulted [the plaintiff], the sheriff would not have been entitled to claim absolute immunity but only the defense that he was acting in good faith" (that is, with qualified immunity). *Id.* at 64–65.

Unable to analogize the function he performed here with that of a judge, Keener instead emphasizes that marshals do indispensable work in helping to exert control over the courtroom. We readily agree, but that alone is not enough to win them a judge's immunity. Indeed, in *Antoine* the Court explicitly rejected the proposition that absolute quasi-judicial immunity should be extended to someone merely because his function "is extremely important or . . . 'indispensable to the appellate process.'" 508 U.S. at 436–37. Likewise, in *Forrester* the Court refused to give a judge absolute immunity for his hiring and firing decisions, even though such "[a]dministrative decisions . . . may be essential to the very functioning of the courts." 484 U.S. at 228. Notwithstanding the importance of a given function to the administration of justice, the official engaged in it does not

deserve absolute quasi-judicial immunity if "by the very nature of his work [he] performs no *judicial* function." *Antoine*, 508 U.S. at 436 n.11 (emphasis added).

Nor do we perceive any danger that declining to give Keener absolute immunity will cause him to second guess the presiding judge or will otherwise erode the trust that exists, and must exist, between them. Keener is exposed to liability (but still protected by qualified immunity) only because he allegedly went beyond what the judge ordered. Thus, rejecting absolute immunity in a case like Keener's does not create any incentive for him to hesitate when told to do something; it merely incentivizes him to stay within the bounds of his orders.

Moreover, as explained above, the choice we face is not between absolute immunity and no immunity at all. Rather, the proper question is what marginal incentives absolute immunity would create as compared to qualified immunity. Keener has given no argument as to why qualified immunity is not able to create optimal levels of trust and accountability in the judge-marshal relationship—or, more generally, to ensure that officials like him act with optimal vigor—and we see no reason to pile more immunity on top of the already robust qualified immunity Keener indisputably enjoys. In this regard, we agree with the Seventh Circuit's observation that "the need for immediate action in the face of potentially fatal consequences is not a situation unique to courtrooms, and yet qualified immunity (which takes into account the particular circumstances faced by the officers) is the rule for law enforcement officers of all kinds, including secret service officers charged with guarding the President. That the conduct occurs in the courtroom, does not, in our opinion,

justify our applying a different rule." *Richman*, 270 F.3d at 438 (citations omitted).[5]

2

Keener's counterargument places great weight on *Mireles v. Waco*, a somewhat peculiar case in which the Supreme Court held that a *judge* retains absolute immunity even when he expressly and specifically orders a police officer to use excessive force to seize a person in his courtroom. *See* 502 U.S. 9, 12–13 (1991) (per curiam). The Court did not decide whether the officer who carried out such a bizarre order—doing as he was told and no more—would also receive absolute immunity. But even assuming he would,[6] it would do Keener little good, for that is not what allegedly happened here. As noted above, Keener is alleged to have

---

[5] When crafting the law of official immunity, it is wholly proper to focus our analysis on the behavioral incentives a given level of immunity is likely to have on the officers in question, *see, e.g.*, *Forrester*, 484 U.S. at 223–24, but we should also bear in mind the possibility that immunity doctrines might influence the *identity* of officeholders in the first instance, *cf. Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982) (warning that the threat of citizen lawsuits might "deter[] . . . able citizens from acceptance of public office"). Such screening effects can be for good or for ill, if, for example, an overly protective immunity regime entices prospective officeholders who are less than public spirited and who would otherwise be deterred from seeking office. On balance, there are some functions for which a (remote) threat of civil liability is preferable to no threat at all.

[6] We have previously suggested that absolute immunity does protect those "who faithfully execute valid court orders." *Coverdell v. Dep't of Soc. & Health Servs.*, 834 F.2d 758, 764 (9th Cir. 1987); *see also id.* at 765 ("Coverdell has neither alleged nor shown that in executing the order, McLaughlin exceeded its scope or acted improperly in any other way.").

employed *more* force than Judge Lippis ordered him to use. That distinction makes an enormous difference.

The *Mireles* Court reasoned that because a judge's order to seize a litigant is by nature a judicial decision, the blanket immunity required to insulate such decisions from collateral attacks must be expansive enough to cover even those that are in error or otherwise outside the bounds of a judge's proper authority. *Id.* However persuasive that logic might be, it does not support stretching absolute immunity to embrace the facts alleged here. The reason is that a judge's order to seize someone carries an implicit caveat that the officer follow the Constitution in doing so. A marshal's decision to go beyond those limits is not a judicial decision, and allowing such decision to be examined in a suit for damages would not permit a collateral attack on the judge's own decision; nor would it make the marshal into a "lightning rod" for vexatious litigants whose real gripe is with the judge himself. *Kermit Constr. Corp. v. Banco Credito Y Ahorro Ponceno*, 547 F.2d 1, 3 (1st Cir. 1976). In our view, extending absolute immunity to a marshal's unauthorized acts would do little if anything to further the important goals underlying the *Mireles* decision. We are satisfied that neither precedent nor first principles justify giving courtroom officials absolute immunity when they allegedly use force in excess of what their judge commanded and the Constitution allows.

III

In addition to invoking absolute immunity, Keener argues that Brooks's suit against him should be dismissed on grounds of qualified immunity.

A

The Supreme Court has remarked several times that in Fourth Amendment excessive force cases, "qualified immunity operates 'to protect officers from the sometimes hazy border between excessive and acceptable force.'" *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). To that end, qualified immunity shields an officer from damages liability when it was not "clearly established that the Fourth Amendment prohibited [his] conduct in the 'situation [he] confronted.'" *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015) (per curiam) (quoting *Brosseau*, 543 U.S. at 199–200). Under that standard, if "we cannot say that only someone 'plainly incompetent' or who 'knowingly violate[s] the law' would have . . . acted as [the officer] did," then he is entitled to qualified immunity. *Id.* at 310 (first alteration in original) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

It bears emphasizing that our analysis must always be trained on the particular facts and circumstances under review; to overcome a qualified immunity defense, it is never enough simply to recite the general proposition that the Fourth Amendment prohibits officers from using an amount of force that is objectively unreasonable. Rather, "[t]he dispositive question is 'whether the violative nature of [the officer's] *particular* conduct is clearly established.'" *Id.* at 308 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). And "[t]his inquiry 'must be undertaken in light of the *specific context* of the case, not as a broad general proposition.'" *Id.* (emphasis added) (quoting *Brosseau*, 543 U.S. at 198). Although the Supreme Court "has rejected the idea that 'an official action is protected by qualified immunity unless the very action in question has previously

been held unlawful,'" *id.* at 314 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)), it is always the case that "existing precedent must have placed the statutory or constitutional question beyond debate," *al-Kidd*, 563 U.S. at 741. "[T]he crux of the qualified immunity test is whether officers have 'fair notice' that they are acting unconstitutionally." *Mullenix*, 136 S. Ct. at 314 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

B

Brooks alleges that Keener employed excessive force by shoving him through the courtroom's double doors. On the merits, such excessive force claims are governed by an objective reasonableness standard derived from the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395–97 (1989). To determine whether state officials used excessive force, courts balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). Courts must examine the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Courts "also consider, under the totality of the circumstances, the quantum of force used to arrest the plaintiff, the availability of alternative methods of capturing or detaining the suspect, and the plaintiff's mental and emotional state." *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010) (citations omitted).

C

In light of these principles, we must ask the following question: assuming the allegations Brooks has made are true, was it "beyond debate," at the time Keener seized him, that the amount of force Keener employed violated the Constitution? If the answer is no—if Keener's actions did not *clearly* violate Brooks's rights under the Fourth Amendment—then Keener is entitled to qualified immunity, and his motion to dismiss must be granted. *Mullenix*, 136 S. Ct. at 309 ("The relevant inquiry is whether existing precedent placed the conclusion that Mullenix acted unreasonably in these circumstances 'beyond debate.'" (quoting *al-Kidd*, 563 U.S. at 741)).

1

Given the standard governing excessive force claims, the allegations in Brooks's complaint are not sufficient to survive a qualified immunity defense even at the motion to dismiss stage. Assuming all of Brooks's allegations are true, it still cannot be said that Keener's use of force was *indisputably* unconstitutional. That is, a reasonable marshal could have believed that the Fourth Amendment permitted him to use the amount of force Brooks claims Keener employed, even if the circumstances were exactly as Brooks describes. For that reason alone, Keener is entitled to qualified immunity, and the district court should have granted his motion to dismiss.

Brooks's complaint states merely that "Keener forcefully shoved [him] through double-doors of a courtroom injuring [his] back." His affidavit is similarly barebones, saying only that Keener "grabb[ed] [him] and forcefully push[ed] [him] out of the courtroom." Moreover, the transcript of

proceedings in front of Judge Lippis demonstrates that before Keener shoved Brooks, Brooks had at least twice defied the judge's order to leave; had continued to resist Keener's verbal instructions to leave; and that two of Brooks's compatriots had similarly disrupted the court, harassing and intimidating two women in the courtroom, all in defiance of Judge Lippis's orders. Given the chaos in the courtroom and the undisputed evidence that Brooks was intent on disobeying the court's instructions—and given his extremely vague and insubstantial allegations about his injury—it is simply not "beyond debate" that Keener employed an unreasonable amount of force.

Indeed, the Supreme Court has stated more than once that—on the merits—"[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Saucier*, 533 U.S. at 209 (quoting *Graham*, 490 U.S. at 396). Similarly, the Court has instructed that "[i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." *Id.* at 205. The events here fit that description. And just as important, Brooks has cited nothing at all to establish that existing precedent silences all debate about whether Keener's shove violated the Fourth Amendment.

Not only is there a lack of authority on Brooks's side, but several cases show that Keener had "substantial grounds . . . to have concluded he had legitimate justification under the law for acting as he did." *Id.* at 208. For instance, in *Ward v. Gates*, 52 F. App'x 341, 344–45 (9th Cir. 2002) (unpublished), a panel of our court rejected an excessive force claim on the merits where the plaintiff alleged that the

officers "unreasonably pointed their weapons at her, handcuffed her roughly, [and] smashed her arm on [a] desk." *Id.* at 344. The excessive force claim failed on the merits despite the fact that "there was no need for the officers to use any force at all," for the officers were "mistaken in their belief that [the plaintiff and her compatriot] were dangerous." *Id.*; *see also, e.g.*, *Crumley v. City of St. Paul*, 324 F.3d 1003, 1008 (8th Cir. 2003) ("Accepting Crumley's version of the facts as true, we conclude no reasonable jury could have found the police officer used excessive force by pushing or shoving Crumley to effect the arrest."). If the officers' conduct in such cases was justified on the merits, then Keener's conduct here cannot be said to be *indisputably* unconstitutional—at worst, there is room for debate as to whether Keener's conduct complied with the Fourth Amendment. "Ultimately, whatever can be said of the wisdom of [Keener's] choice, this Court's precedents do not place the conclusion that he acted unreasonably in these circumstances 'beyond debate.'" *Mullenix*, 136 S. Ct. at 311 (quoting *al-Kidd*, 563 U.S. at 741). That is enough to win him a qualified immunity defense.

2

The district court concluded otherwise, but its analysis betrays a fundamental misunderstanding about how to assess a qualified immunity defense to an excessive force claim. In denying Keener's motion to dismiss based on qualified immunity, the district court reasoned that "Keener's conduct could be inferred to have violated objective standards of reasonableness regarding the removal of Mr. Brooks from the courtroom." Brooks takes the same tack, arguing simply that "the well-pled allegations . . . set forth that Keener's actions were not objectively reasonable." Those propositions may be

true, but they are not enough to defeat Keener's qualified immunity defense. The district court and Brooks's analysis says only that, on the merits, Keener's conduct may have violated the Fourth Amendment. But, crucially, they both have failed to consider the distinct question discussed above: whether, based on the allegations in the complaint, Keener's conduct could be inferred to have violated a "clearly established" right. The answer is no, because as we have explained, the allegations in the complaint do not plausibly place the illegality of Keener's conduct "beyond debate."

In other words, the district court here committed the same error the Supreme Court corrected in *Saucier v. Katz*: equating the excessive force question on the merits (did Keener employ an objectively unreasonable amount of force?) with the qualified immunity question (did existing law remove any doubt that such force was objectively unreasonable?). The two questions are not the same. *See Saucier*, 533 U.S. at 202–03 (rejecting the proposition "that qualified immunity is merely duplicative in an excessive force case"). The Court has made clear that to defeat qualified immunity, Brooks must not only allege that Keener used an unreasonable amount of force, but also that *no reasonable officer could disagree* that Keener used an unreasonable amount of force. *Id.* at 202 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). As we have already discussed, Brooks's allegations do not suffice to overcome Keener's qualified immunity defense. The complaint should have been dismissed on those grounds.

IV

For the foregoing reasons, we **AFFIRM** the district court's denial of Keener's absolute immunity defense and **REVERSE** the district court's denial of his qualified immunity defense. Appellee's motion to dismiss, filed on April 16, 2015, is denied. Each party shall bear its own costs on appeal.