**NOT FOR PUBLICATION**

**FILED**

MAR 18 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LINDA SENN, | No. 21-35293 |
| Plaintiff-Appellee, | D.C. No. 3:18-cv-01814-HZ |
| v. | |
| KYLE SMITH, | MEMORANDUM* |
| Defendant-Appellant, | |
| and | |
| CITY OF PORTLAND; et al., | |
| Defendants. | |

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, Chief District Judge, Presiding

Argued and Submitted March 10, 2022
Portland, Oregon

Before: GRABER, BEA, and M. SMITH, Circuit Judges.
Dissent by Judge BEA.

Defendant Kyle Smith, a deputy sergeant with the Multnomah County

Sheriff's Office, timely appeals the district court's denial of qualified immunity in

_____

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

this 42 U.S.C. § 1983 action. Plaintiff Linda Senn alleges that Defendant violated her Fourth Amendment right to be free of excessive force by pepper-spraying her in the face during a protest in front of Portland City Hall. In this interlocutory appeal, we have jurisdiction only over the legal question whether, taking the facts in the light most favorable to Plaintiff, Defendant is entitled to qualified immunity. George v. Morris, 736 F.3d 829, 834 (9th Cir. 2013). Reviewing de novo the district court's legal conclusions, Davis v. United States, 854 F.3d 594, 598 (9th Cir. 2017), we affirm.

1. The district court correctly held that, viewing the facts in the light most favorable to Plaintiff, a reasonable jury could conclude:

(a) Defendant pepper-sprayed Plaintiff in the face.

(b) Plaintiff had committed no crime, or only a minor crime such as obstructing a police officer.

(c) Plaintiff was engaged in no resistance at all or, at most, passive resistance, and Plaintiff posed no threat to safety. As the district court stated, "[t]he parties agree that the video shows [an officer, Plaintiff, and a third party] 'appear to lose their balance or stumble away from City Hall as they make contact.'" A jury could conclude that Plaintiff "was stumbling backwards and touched [the officer's] arm in a reflexive attempt to steady herself" and that Plaintiff "did not present an immediate threat to" the officer or the public. A

2

reasonable jury also could conclude that Defendant saw the other officer push Plaintiff down the stairs just before she appeared to lose her balance as she was leaving the scene.

A reasonable jury could (though of course it need not) find that Plaintiff was completely non-threatening at the time she was pepper-sprayed. For example, she carried no weapon, she was not close to the officer whose lower arm she touched with an outstretched hand, and the video shows only a very brief and non-aggressive (perhaps even unintentional) touching. A reasonable jury could find that Plaintiff was not resisting arrest and that she was non-violent the entire time Defendant was on the scene.

(d) In the circumstances, the force was excessive.

2. The district court correctly concluded that the law was clearly established such that, at the time of the incident in 2016, a reasonable officer would have been "on notice" that his or her conduct violated the Fourth Amendment. Ballentine v. Tucker, No. 20-16805, 2022 WL 679084, at *8 (9th Cir. Mar. 8, 2022). "[T]he right to be free from the application of non-trivial force for engaging in mere passive resistance was clearly established" by 2016. Rice v. Morehouse, 989 F.3d 1112, 1127 (9th Cir. 2021) (citing Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1093 (9th Cir. 2013); Nelson v. City of Davis, 685 F.3d 867, 881 (9th Cir. 2012)) (internal quotation marks omitted). More specifically, we had held that "a

3

textbook violation" of the Fourth Amendment occurs when an officer uses "significant force without warning against an individual who committed only minor misdemeanors; who posed no apparent threat to officer or public safety; and who was not seeking to flee, even though a variety of less intrusive alternatives to the use of such force was available." Young v. County of Los Angeles, 655 F.3d 1156, 1170 (9th Cir. 2011).

At the time of the incident, it was clearly established that:

(a) The use of pepper spray, particularly in the face, significantly intrudes on a person's liberty and is a non-trivial, intermediate level of force. See id. at 1161 (holding that the use of pepper spray is a form of "force capable of inflicting significant pain and causing serious injury" and is an "intermediate force"); id. at 1162 ("Pepper spray is designed to cause intense pain, and inflicts a burning sensation that causes mucus to come out of the nose, an involuntary closing of the eyes, a gagging reflex, and temporary paralysis of the larynx, as well as disorientation, anxiety, and panic." (internal quotation marks omitted)); id. at 1162–63 ("[T]here is no question that [the use of pepper spray] against an individual is a sufficiently serious intrusion upon liberty . . . .").

(b) Any crime that Plaintiff was committing was only a minor misdemeanor that would not justify the use of more than minimal force. See Mattos v. Agarano, 661 F.3d 433, 444 (9th Cir. 2011) (en banc) (noting that we have held that

4

"trespassing" and "obstructing a police officer" are "not severe crimes" for purposes of this analysis (citing Davis v. City of Las Vegas, 478 F.3d 1048, 1055 (9th Cir. 2007))); Nelson, 685 F.3d at 880 (holding that "a minor infraction . . . justifies, at most, only minimal use of force.").

(c) Plaintiff's brief, perhaps unintentional, touching of a police officer's hand or sleeve did not justify the use of pepper spray. For example, in Mattos, 661 F.3d at 449, the plaintiff intentionally raised her hands and placed them on an officer's chest, a movement that we characterized as "defensive" under the circumstances, and therefore not warranting the use of force. Similarly, in Davis, 478 F.3d at 1052, the plaintiff engaged in a "pushing and pulling match" with an officer—conduct that is far more threatening and potentially dangerous than Plaintiff's brief non-threatening touching here, even considering that the plaintiff in Davis was handcuffed at the time.

(d) In the circumstances of this case, as in Nelson, 685 F.3d at 881, "the general disorder of the [protest] cannot be used to legitimize the use of [pepper-spray] against non-threatening individuals."

In sum, every reasonable officer had notice at the time of the incident that, if reasonable alternatives are available, even in somewhat chaotic circumstances, he or she cannot pepper-spray a person who has committed no serious crime and who is not a threat to anyone's safety.

**AFFIRMED.**

Bea, Circuit Judge, dissenting:

I part ways with my colleagues on one issue: whether the applicable Fourth Amendment law was clearly established in 2016, the time of the protest at Portland City Hall.

We have set a high bar for when a constitutional rule is clearly established. The constitutional rule must be fact-specific: Senn must point to "prior case law that articulates a constitutional rule specific enough to alert [this defendant, Smith,] in this case that [his] particular conduct was unlawful." Sharp v. County of Orange, 871 F.3d 901, 911 (9th Cir. 2017). And the constitutional rule must be clear: "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." Brooks v. Clark County, 828 F.3d 910, 920 (9th Cir. 2016) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). In my view, the law here fails both criteria.

First, the legal rules the majority cites are not sufficiently specific. At a high level of generality, Ninth Circuit case law does speak to the individual legal issues in this case (i.e., what constitutes active resistance and what actions pose a threat to police officers). But the majority's cases are all factually distinguishable. Most notably, none involved the precise context at issue here: one police officer assessing in real-time whether a second officer was under threat from a protestor who reached out to grab the second officer's arm. In Mattos v. Agarano, 661 F.3d 433 (9th Cir.

1

2011) (en banc), for instance, we discussed the reasonableness of: 1) of a single officer; 2) on a domestic violence call in a home; 3) who was touched by the plaintiff; and 4) that single officer stepped back, commented that he had been touched, and subsequently employed a taser on the plaintiff. See id. at 438–39, 449. Here, in contrast, we have: 1) two officers; 2) at a multitudinous protest; 3) one of whom was grabbed by the plaintiff; and 4) the other officer (here, the defendant) reacted immediately to assist his comrade.

Second, and following from my first point, the constitutional rules here were not "beyond debate." Brooks, 828 F.3d at 920 (quoting al-Kidd, 563 U.S. at 741). In large part because of the factual distinctions between this case and the precedent cited by the majority, I see plenty of room for debate on the constitutional question here: whether, at the time of the 2016 protest, Senn had a clearly established Fourth Amendment right to not be pepper sprayed in this case's factual circumstances.

All told, for the law here to be clearly established, Officer Smith must have been "plainly incompetent" not to know that Senn poised no serious harm to the other officer and then to do what he did at Portland City Hall. Sandoval v. County. of San Diego, 985 F.3d 657, 672 (9th Cir.) (2021) (quoting Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049 (9th Cir. 2002)). In my view, Smith was not. He thus should benefit from qualified immunity's shield from liability.

I respectfully dissent.

2